FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 16, 2016

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DARREN A. BOE, | No. 2:15-CV-00163-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social Security, | ECF Nos. 15, 16 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 16).

1

**JURISDICTION**

2        The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

3  1383(c)(3).

4

**STANDARD OF REVIEW**

5        A district court's review of a final decision of the Commissioner of Social

6  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

7  limited; the Commissioner's decision will be disturbed "only if it is not supported

8  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

9  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

10  reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159

11  (quotation and citation omitted).  Stated differently, substantial evidence equates to

12  "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

13  citation omitted).  In determining whether the standard has been satisfied, a

14  reviewing court must consider the entire record as a whole rather than searching

15  for supporting evidence in isolation.  *Id.*

16        In reviewing a denial of benefits, a district court may not substitute its

17  judgment for that of the Commissioner.  If the evidence in the record "is

18  susceptible to more than one rational interpretation, [the court] must uphold the

19  ALJ's findings if they are supported by inferences reasonably drawn from the

20  record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

1  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

2  defined generally as the claimant's ability to perform physical and mental work

3  activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

4  404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the

5  analysis.

6  At step four, the Commissioner considers whether, in view of the claimant's

7  RFC, the claimant is capable of performing work that he or she has performed in

8  the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

9  If the claimant is capable of performing past relevant work, the Commissioner

10  must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).

11  If the claimant is incapable of performing such work, the analysis proceeds to step

12  five.

13  At step five, the Commissioner considers whether, in view of the claimant's

14  RFC, the claimant is capable of performing other work in the national economy.

15  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

16  the Commissioner must also consider vocational factors such as the claimant's age,

17  education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v);

18  416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

19  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

20  404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits."  *Parra v. Astrue*, 481 F. 3d 742, 746 (9th Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)).  When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability.  20 C.F.R. §§ 404.1535(a), 416.935(a).  In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of  the remaining limitations would be disabling.  *Id.* §§ 404.1535(b)(2), 416.935(b)(2).  If the remaining limitations would not be disabling, drug or alcohol addiction is a contributing factor material to the determination of disability.  *Id.*  If

the remaining limitations would be disabling, the claimant is disabled independent

of the drug or alcohol addiction and the addiction is not a contributing factor

material to disability.  *Id*.  Plaintiff has the burden of showing that drug and alcohol

addiction is not a contributing factor material to disability.  *Parra*, 481 F.3d at 748.

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income benefits on July 13, 2009,

Tr. 394-396, and for disability insurance benefits on August 20, 2009, Tr.  387-

393.  Plaintiff's applications were denied initially, Tr. 199-209, and on

reconsideration, Tr. 213-223.  Plaintiff appeared at a hearing before an

Administrative Law Judge (ALJ) on August 30, 2011.  Tr. 40-78.  On September

16, 2011, the ALJ denied Plaintiff's claim.  Tr. 170-192.  The Appeals Council

remanded the matter to the ALJ on May 29, 2013.  Tr. 193-198.

After remand, Plaintiff appeared at two hearings before an ALJ on October

29, 2013, Tr. 79-108, and on February 4, 2014, Tr. 109-140.  On February 28,

2014, the ALJ denied Plaintiff's claim.  Tr. 17-39.

At the outset, the ALJ found that Plaintiff met the insured status

requirements of the Act with respect to his disability insurance benefit claim

through September 30, 2008.  Tr.  23.  At step one, the ALJ found that Plaintiff has

not engaged in substantial gainful activity since the alleged onset date, February 7,

2008.  Tr. 24.  At step two, the ALJ found that Plaintiff has the following severe

impairments: HIV; hepatitis C; asthma; depressive disorder, NOS; anxiety disorder, NOS; borderline personality disorder, NOS; and polysubstance abuse disorder. Tr. 24. At step three, the ALJ found that Plaintiff's impairments, considering his substance abuse, met Listings 12.04, 12.06, 12.08, 12.09 and 12.10. Tr. 24. The ALJ found that if Plaintiff stopped substance use, his impairments would be severe but would not meet or medically equal the requirements of any listed impairment. Tr. 25. The ALJ found that if Plaintiff stopped substance abuse, he would have the RFC to perform a range of light work, with the following additional limitations:

> He should avoid concentrated exposure to pulmonary irritants and extreme cold. The claimant would have the following mental nonexertional limitations: he can perform repetitive tasks with simple 1-3 step instruction, and with no public contact. In addition, the claimant takes medication for his symptomology; however, despite any side effects of the medicine, the claimant would be able to remain reasonably attentive in a work setting and would be able to carry out normal work assignments satisfactorily.

Tr. 26-27.

The ALJ found that if Plaintiff stopped substance use, he would be unable to perform his past relevant work, but, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff can perform, such as production assembler, sorter, mail clerk, account clerk, and final assembler. Tr. 32. The ALJ found substance abuse disorder is thus a contributing factor material to the disability determination. Tr. 33. On that basis,

the ALJ concluded that Plaintiff is not disabled as defined by the Act because substance abuse renders him ineligible for benefits.  Tr. 33.

On May 6, 2015, the Appeals Council denied review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplement security income benefits under Title XVI of the Social Security Act.  ECF No. 15.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly discredited Plaintiff's symptom claims;

2.  Whether the ALJ properly weighed the medical opinion evidence; and ECF No. 15 at 11.

## DISCUSSION

**A.  Adverse Credibility Finding**

First, Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting his symptom claims.  ECF No. 15 at 12-17.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that her impairment could reasonably be

expected to cause the severity of the symptom she has alleged; she need only show

that it could reasonably have caused some degree of the symptom." *Vasquez v.*

*Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted).  "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)

("[T]he ALJ must make a credibility determination with findings sufficiently

specific to permit the court to conclude that the ALJ did not arbitrarily discredit

claimant's testimony.").  "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are less than fully credible. Tr. 27-29.

### 1. Lack of Objective Evidence of Physical Impairments

First, the ALJ found that Plaintiff's alleged physical impairments and their corresponding symptoms were not supported by the medical evidence. Tr. 27. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ noted that the medical evidence was inconsistent with allegedly disabling limitations, and most of the physical examinations showed essentially

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

1  normal findings.  Tr. 27-28.  For instance, the ALJ observed that although Plaintiff

2  complained of severe fatigue, the ALJ observed that in March 2011, when Plaintiff

3  reported thirty days of sobriety to his treatment provider, he also reported no

4  fatigue, night sweats or fever.  Tr. 28 (citing Tr. 759).  Similarly, while Plaintiff

5  alleged severe limitations related to asthma, Plaintiff's treating physician, Dr.

6  Zugec, found that Plaintiff's "respiratory was normal to inspection, lungs clear to

7  percussion and auscultation and he denied any cough, dyspnea or wheezing," Tr.

8  28 (citing Tr. 754), and a doctor testified that Plaintiff "is not on any anti-asthma

9  medicine at this time, no inhalers."  Tr. 86.  An exam in February 2008 revealed

10 "no exam findings"; Plaintiff was described as "healthy appearing."  Tr. 541.  In

11 November 2008, an examination again was essentially unremarkable, except that

12 Plaintiff complained of pain on range of motion in the lumbar spine.  Tr. 644.  An

13 October 2010 exam revealed no spinal abnormalities, normal musculature, no joint

14 abnormalities and normal range of motion in all extremities.  Tr. 706.  Moreover,

15 the ALJ accurately observed that records from treating and consulting doctors did

16 not support Plaintiff's allegation that he was unable to perform any work activities.

17 Tr. 28.

18      These inconsistencies, between Plaintiff's alleged limitations and the

19 medical evidence, provided a permissible reason for discounting Plaintiff's

20 credibility.  *See Thomas*, 278 F.3d at 958-59 ("If the ALJ finds that the claimant's

testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination. . . [t]he ALJ may consider . . . testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which the claimant complains.") (internal citations and modifications omitted).

Here, Plaintiff does not support his argument with citations to medical evidence that the ALJ should have relied on as supporting his allegations, giving greater credence to the ALJ's determination.  Because an ALJ may discount pain and symptom testimony based on lack of medical evidence, as long as it is not the sole basis for discounting a claimant's testimony (and here it is not), the ALJ did not err when he found Plaintiff's complaints exceeded and were not supported by objective and physical exam findings.

### 2. Lack of Compliance with Medical Treatment

Next, the ALJ discounted Plaintiff's credibility because Plaintiff was noncompliant with medical recommendations and in taking prescribed medications.  Tr. 28-29.  Failing to comply with medical treatment casts doubt on a claimant's allegations of disabling impairment, since one with severe impairments would presumably follow prescribed medical treatment to obtain relief.  Accordingly, failing to follow a prescribed course of medical treatment is a permissible reason for discounting Plaintiff's credibility.  *Smolen v. Chater*, 80

F.3d 1273, 1284 (9th Cir. 1996) (An ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment when assessing a claimant's credibility.) (citations omitted); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (unexplained or inadequately explained failure to comply with medical treatment is a factor the ALJ may properly consider when determining a claimant's credibility).

The ALJ noted Plaintiff's lack of compliance included failing to attend appointments for HIV follow up, as well as failing to take prescribed medication. Tr. 28-29. For example, the ALJ observed that treatment providers in January of 2010 indicated Plaintiff missed several appointments for regular HIV follow up. Tr. 28 (citing Tr. 668). In September 2010, Plaintiff had bronchitis; however, he failed to pick up prescribed medication and "continues smoking and is not interested [in quitting] at the present time." Tr. 702. In March 2012, treatment providers noted that Plaintiff had been "on the coast" and has had no treatment for five months. Tr. 801.

Treatment providers indicated that Plaintiff failed to consistently take prescribed medication. *See, e.g.*, Tr. 630 (in June 2009, treating physician Dr. Zugec noted Plaintiff stated that he takes HAART only 75% of the time; he forgets to take it and does not like taking pills); Tr. 668 (in January 2010, a treatment provider noted that Plaintiff was "hit or miss" with taking medications); Tr. 697 (in

August 2010, Plaintiff had not recently been compliant with medication); Tr. 759

(in March 2011, Dr. Zugec noted lab results after one month of not taking

medication could explain Plaintiff's worsening numbers); Tr. 798 (in September

2011, Plaintiff had been out of HIV medication for several weeks); Tr. 801 (in

March 2012, Plaintiff "ha[d] been out of HIV meds for the last months, stopped all

at once.").

Plaintiff contends his testimony and the medical record support his position

that medications had side effects "that actually [contributed] to his symptoms

rather than diminishing them."  ECF No. 15 at 13 (citing Tr. 88-89 (records

indicate that taking Clindamycin caused diarrhea);  Tr. 117-119 (Plaintiff testified

that he had diarrhea whether he took his HIV medication or not -- it made no

difference); Tr. 510-520 (a Wikipedia entry discussing antiretroviral drugs); Tr.

549-550 (in May 2007 Plaintiff presents to establish primary care; complaints

include persistent "loose stools of unclear etiology"); Tr. 661-663 (on February 18,

2010, Plaintiff complains of diarrhea that began "after he completed the Rx for

staph infection-MRSA, last month"); Tr. 693-696 (a repeat of Dr. Zugec's

February 18, 2010 record); and Tr. 877-899 (a document printed from PDR.net on

the drug Norivr)).

Plaintiff's citations purportedly illustrating his reasons for noncompliance

are inconsistent with his reports to treatment providers.  As noted, when Plaintiff

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

explained why he was not medication compliant, he said that he forgot and that he did *not* like to take pills – he did *not* say it was due to adverse side effects.  *See* Tr. 630.  Similarly, Plaintiff testified that he experienced diarrhea fifteen days a month *regardless* of whether he took prescribed HIV medication, it made no difference. Tr. 117, 119.  Plaintiff's own testimony is inconsistent with the reason he now offers on appeal for failing to comply with taking prescribed medication.

The ALJ properly relied on Plaintiff's unexplained and inadequately explained reasons for failing to take prescribed medication when the ALJ assessed Plaintiff as less than fully credible.

### 3. *Lack of Objective Medical Evidence of Mental Health Symptoms and Minimal Mental Health Treatment*

Further, despite allegedly disabling mental limitations, the ALJ noted that mental health treatment has been "very infrequent."  Tr. 29.  While the failure to seek mental health treatment may not be a legitimate basis to reject a claimant's symptom claims, *see Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), the lack of credible evidence in the record corroborating the extent of mental limitations can be, *see Molina*, 674 F.3d at 1113-14.

As an example, in February 2008, treatment providers described Plaintiff as healthy appearing and in no apparent distress.  Tr. 541.  In October 2008, Plaintiff was alert, well-groomed, oriented to person, time and place, and apparently a good historian, as his memory was deemed grossly intact.  His mood and affect were

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

1    congruent.  Significantly, Plaintiff was "not interested" in medication for

2    depression.  Tr. 646-648.  The ALJ points out that if Plaintiff's health problems

3    were not serious enough to motivate him to seek or comply with treatment, it is

4    difficult to accept his assertion that these problems are disabling.  Tr. 29.

5          Plaintiff contends that he testified, and the record supports, that he "had

6    difficulty leaving the house and isolated himself from people," and "the inability to

7    attend all of his appointments only supports his claim[,]" that is, further supported

8    claimed severe mental limitations.  ECF No. 15 at 13 (citing Tr. 114 (Plaintiff's

9    testimony), Tr. 122-123 (Plaintiff's testimony), Tr. 725 (Dr. Mabee opined it is

10   likely that Plaintiff is socially isolated), Tr. 733 (Dr. Arnold noted Plaintiff

11   indicated that he will isolate himself and withdraw from others), Tr. 791 (Dr.

12   Arnold noted Plaintiff reported no changes in his mental health; Dr. Arnold opined

13   current symptoms would interfere with productivity and social interactions, and

14   Plaintiff admitted DAA is active at the time of this evaluation).

15         Based on this record, it was reasonable for the ALJ to conclude that

16   Plaintiff's failure to follow prescribed treatment for physical or mental conditions

17   was not necessarily caused by his mental impairments.  For example, in March of

18   2012, a treatment provider noted that Plaintiff has not been seen "in approximately

19   five months,"  has a long history of failing to comply with taking prescribed

20   medication, and continues to drink.  Tr. 801-803.  The ALJ cited Plaintiff's

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

testimony that he stopped mental health treatment, not because of social anxiety, but because Plaintiff's counselor retired.  Tr. 27 (citing Tr. 125).  Nor was the ALJ required to credit Plaintiff's own testimony when determining the veracity of that testimony.

Plaintiff also relies on psychological evaluations in August 2008 (Tr. 725); May 2011 (Tr. 733), and April 2012 (Tr. 791), to support his alleged reason for noncompliance with treatment.  However, these evaluations do not explain Plaintiff's five months of non-compliance with medical treatment from November of 2011 until March of 2012, nor do they refute his stated reason, his counselor's retirement, for stopping mental health treatment.  Here, Plaintiff's lack of compliance with respect to mental health treatment was consistent with his lack of compliance with his other treatment.  It is a reasonable conclusion that such lack of compliance was evidence that his symptoms are not as severe as alleged.  For example, Plaintiff's failure to take HIV medication cannot be explained by his mental health symptoms.  Although Plaintiff alleges the ALJ should have found mental limitations were so severe that they prevented him from attending medical appointments for both mental and physical problems, the record does not compel this conclusion.  Moreover, the ALJ was entitled to draw inferences from the record.  The ALJ concluded Plaintiff's failure to comply "suggests that the symptoms may not have been as limiting as the claimant has alleged in connection

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

1   with this application."  Tr. 28.  With no opinion evidence stating that Plaintiff

2   failed to keep his medical appointments specifically due to mental limitations, the

3   asserted "reason" is quite possibly an after-the-fact contention, and Plaintiff fails to

4   show that the ALJ's interpretation is not a rational one.  *See Burch*, 400 F.3d at 679

5   (Where evidence is susceptible to more than one rational interpretation, it is the

6   ALJ's conclusion that must be upheld). The amount and type of treatment is "an

7   important indicator of the intensity and persistence of [a claimant's] symptoms."

8   20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Burch*, 400 F.3d at 681.  As noted, an

9   ALJ may rely on an unexplained or inadequately explained failure to seek

10  treatment when assessing a claimant's credibility.  *Tommasetti v. Astrue*, 533 F.3d

11  1035, 1039 (9th Cir. 2008).

12        Plaintiff alleges further alleges that both Dr. Belzer and Dr. Layton testified

13  noncompliance can be attributable to Plaintiff's "uncontradicted diagnosed

14  personality disorder."  ECF No. 15 at 13 (citing Tr. 94, 106).  Dr. Belzer was asked

15  whether Plaintiff's non-compliance "could" be due to his psychological problems,

16  like depression or personality disorder, to which Dr. Belzer answered "Yes."  Tr.

17  94.  However, while in the abstract this *could* be the reason, here, Plaintiff gave his

18  treatment providers different reasons: he said that he forgot to take pills and he did

19  not like to take pills, he left the area for five months, and he failed to continue

20  mental health treatment because his counselor retired.  The ALJ did not err when

he weighed the evidence and found that Plaintiff's unexplained and inadequately explained non-compliance diminished his credibility.

Dr. Lawson's testimony is less clear, but it appears he testified that with some personality disorders, a person would be more, rather than less, compliant with treatment. Tr. 106. This answer does not support Plaintiff's contention that his diagnosis caused medical noncompliance.

*4. Evidence of Exaggeration*

Next, the ALJ discredited Plaintiff's testimony due to evidence suggesting that Plaintiff has exaggerated symptoms and limitations. Specifically, the ALJ found

> Dr. Mabee reported the claimant's score on the Beck Depression Inventory [BDI] was of a severe level of reported depression. He noted that elevated scores such as the claimant's in an outpatient setting were typically considered as reflecting an over-endorsing response style. He also note[d] that while the Personality Assessment Inventory [PAI] test was deemed valid, it was also noted that the results suggest there was a possibility the claimant might have over-represented or exaggerated the actual degree of psychopathology. It was also noted that his report further suggested his past drug use might be the sources of some of the difficulties he was experiencing (citing Tr. 724-25).

> Ms. Osborne-Elmer examined the claimant and noted the claimant demonstrated poor performance on the Rey 15-item test.[1]  She also noted that while he appeared to be somewhat depressed and anxious, it was difficult to determine if his depression and anxiety were directly related to the effects of his substance use (citing Tr. 569, 572).  If the claimant has shown he is willing to exaggerate his mental health problems, it causes the undersigned to question his credibility with regard to all his alleged limitations.

Tr. 29.

The tendency to exaggerate provided a permissible reason for discounting Plaintiff's credibility.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (the ALJ appropriately considered Plaintiff's tendency to exaggerate when assessing Plaintiff's credibility, which was shown in a doctor's observation that Plaintiff was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work.).  The ALJ properly relied on test scores on the BDI, PAI and RMT when he assessed Plaintiff's credibility.

Plaintiff challenges the ALJ's finding by citing the PAI result indicating "there is a *possibility* he may have over represented or exaggerated the actual degree of psychopathology."  ECF No. 15 at 14.  Plaintiff points to the portion of the PAI indicating that profile patterns similar to his are usually associated with

---

[1] The Rey 15-Item Memory Test (RMT) is a memory test for malingering.

National Center for Biotechnology Information,

www.ncbi.nlm.nih.gov/pubmed/8337088.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

marked distress.  He alleges, "Clearly, the potential for exaggeration in testing is associated with [Plaintiff's] condition and not related to his credibility."  ECF No. 15 at 14 (citing Tr. 725).

However, this is simply Plaintiff's alternate interpretation of the evidence. Even if the PAI only identified the possibility of exaggeration, Plaintiff's "condition" does not explain over-reporting on the BDI nor the noted lack of effort on the RMT.  Plaintiff's test results as a whole constitute substantial evidence supporting the ALJ's finding that Plaintiff's tendency to exaggerate undermines his credibility.

*5. Daily Activities*

Last, the ALJ found that Plaintiff's activities of daily living are not as limited as reported symptoms suggest.  Tr. 28-29.  A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair,* 885 F.2d at 603 (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.").

The ALJ found, for example, that Plaintiff told a treatment provider in

February 2008 that he wanted to work full time as a waiter, Tr. 541, indicating he

believed he was capable of much greater exertion than alleged.  In addition,

Plaintiff's activities have included regularly playing pool (Tr. 124); window

shopping or people watching at the mall (Tr. 723); cleaning, doing laundry,

weeding flower beds, doing homework, and walking the dog (Tr. 732); gardening,

writing, playing with the dog, going to the movies, spending time with friends,

walking and listening to music (Tr. 743).  "While a claimant need not vegetate in a

dark room in order to be eligible for benefits, the ALJ may discredit a claimant's

testimony when the claimant reports participation in everyday activities indicating

capacities that are transferable to a work setting" or when activities "contradict

claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13 (internal

quotation marks and citations omitted).

Plaintiff alleges "the ALJ pointed out things that [Plaintiff] told his treatment

providers that he liked to do, not that he could do [them] every day or for extended

periods like that expected of a full-time employee."  ECF No. 15 at 15.

However, even though this level of activity may not itself show that Plaintiff

can work, it allows a reasonable mind to conclude that Plaintiff's symptom

allegations are inconsistent with his actual level of activity.  *See, e.g., Molina*, 674

F.3d at 1113 (even when a claimant's activities suggest some difficulty

functioning, they can support an adverse credibility determination to the extent

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23

they contradict a claimant's claims of a totally debilitating impairment.).  Plaintiff

is correct that the record shows Plaintiff stated he "likes gardening,"  Tr. 743, and

this may not reflect his actual daily functioning.  However, Plaintiff stated he that

he engaged in the remainder of the activities cited by the ALJ.  *See, e.g.,* Tr. 732

(Plaintiff states that on a daily basis, he cleans house, weeds the flower beds, does

homework and takes the dog for a walk); Tr. 119-20, 123-24 (Plaintiff testified that

he lives alone, gets around by walking or taking the bus, and shops for groceries;

he also plays pool, which he thinks he is good at).  Plaintiff alleges he has such

disabling anxiety that he has difficulty leaving the house and isolates himself from

people.  *See* Tr. 114, 122-23 (Plaintiff's own testimony); Tr. 725 (Dr. Mabee's

2008 opinion it is "likely" that Plaintiff is socially isolated); Tr. 733 (Plaintiff

reports that he isolates himself); and Tr. 791 (Plaintiff reports he shops

independently, rides the bus, and in the afternoons may walk around until

bedtime).  The ALJ is correct that Plaintiff's contention he seldom leaves his

apartment is refuted by activities he has said he spends time engaged in.

       An ALJ may properly support his adverse credibility finding by citing to

daily activities that are inconsistent with claims of disabling limitations.  *Molina*,

674 F.3d at 1113 (a claimant's activities can support an adverse credibility

determination to the extent they contradict a claimant's claims of a totally

debilitating impairment).  However, even assuming that the ALJ erred in relying

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24

on Plaintiff's daily activities, any error is harmless because, as discussed in detail in this section, the ALJ offered additional reasons, supported by substantial evidence, for the ultimate adverse credibility finding. *See Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1162-63 (9th 2008).

Plaintiff alleges that the Commissioner "culled the record" for rationale to support the ALJ's credibility finding, and identified evidence that the ALJ did not rely on in making the decision. ECF No. 16 at 6-12 (citing *Orn*, 495 F.3d at 630). Plaintiff contends that the Court may not affirm the ALJ on a ground upon which the ALJ did not rely. ECF No. 17 at 2. It is not error, however, to examine the record to see if it supports the ALJ's reasoning. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("To determine whether substantial evidence supports the ALJ's decision, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.") (quotation and citation omitted). More importantly, Plaintiff's citations to Defendant's brief do not support his argument; rather, the cited portions reflect factors that the ALJ explicitly relied upon. *See* ECF No. 16 at 6-7 (exaggeration); ECF No. 16 at 6-7, 11-12 (possible effects of drug use noted by some examiners); ECF No. 16 at 7-8 (activities and statements inconsistent with allegations); ECF No. 16 at 8-10 (lack of evidence supporting complaints); and ECF No. 16 at 9-12 (lack of treatment and noncompliance with treatment). Accordingly, the Court's

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 25

examination of the record in this context is not "supplying a ground not invoked" by the ALJ.[2]

In sum, despite Plaintiff's arguments to the contrary, the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163.

**B.  Medical Opinion Evidence**

Next, Plaintiff faults the ALJ for discounting the opinion of examining psychologist John Arnold, Ph.D.  ECF No. 15 at 17-20.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a

_____

[2] Plaintiff challenges one of Defendant's citations to the record.  ECF No. 17 at 2 (referring to ECF No. 16 at 8 (citing Tr. 753)).  The correct reference is Tr. 743. This typographical error is harmless since the ALJ appropriately relied on the record of Plaintiff's stated activities when he assessed credibility.

reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

Dr. Arnold conducted two psychological examinations of Plaintiff, in May 2011 and April 2012. Tr. 730-737; 790-796. Following the first in May 2011, he diagnosed, in part, alcohol dependence, in early full remission (per client report); cannabis abuse, in early full remission (per client report); and amphetamine (meth) abuse, in sustained full remission (per client report). Tr. 731. Dr. Arnold opined,

using a check-box form, that Plaintiff suffered a marked limitation in the ability to communicate and perform effectively in a work setting with public contact, and he assessed five moderate work-related limitations.  He opined that these assessed limitations "are without the effects of DA & A" (drug and alcohol abuse).  Tr. 732.

During the second examination in April 2012, Plaintiff stated he drank twice a month and last used marijuana a month earlier.  Tr. 791.  Dr. Arnold opined that "[o]ngoing substance abuse could impact treatment cooperation."  *Id*.  As to functional limitations, Dr. Arnold opined that Plaintiff is capable of understanding and carrying out simple instructions, is able to concentrate for short periods of time, and can complete simple tasks without close supervision and not disrupt others.  He would work best in positions that have minimal interaction with others.  *Id.*

The ALJ gave little weight to Dr. Arnold's opinions.  Tr. 30.  Because Dr. Arnold's opinions are contradicted, in part, by the opinions of Dr. Layton and Dr. Moore (Tr. 103-104), the ALJ was required to give specific and legitimate reasons supported by substantial evidence for giving Dr. Arnold's opinion little weight.  *See Flaten v. Secretary of Health and Human Serv*., 44 F.3d 1453, 1463 (9th Cir. 1995) (when there is conflicting medical evidence, the Secretary need only set forth "specific, legitimate reasons" constituting substantial evidence for

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 28

1    disregarding a treating [or examining] physician's opinion) (internal quotation and

2    citations omitted).

3        *1. Check-box Form*

4        With respect to Dr. Arnold's evaluations, the ALJ noted, in part:

5        The undersigned accords little weight to the check block form reports
         prepared for the Department of Social and Health Services [DSHS] in a
6        secondary gain context.  Opinions rendered on check-box or form reports
         which do not contain significant explanation of the basis for the conclusions
7        may appropriately be accorded little or no weight.  *See Crane v. Shalala*, 76
         F.3d 251, 253 (9th Cir. 1996); *Johnson v. Chater*, 87 F.3d 1015, 1018 (9th
8        Cir. 1996).  The definition of "marked" used by the [DSHS] differs from the
         definition contained in the regulations for assessing mental disorders.
9        Moreover, the comments in the section entitled "Mental Health Priority
         Populations" in the [DSHS] form, make it clear that both the standards for
10       completing the form, and the public interest served by the form, are different
         from the standards and objectives of these hearings under the authority of
11       the Social Security Administration.

12   Tr. 30.  An ALJ may reject a contradicted examining source's medical opinion

13   rendered on a check-box form which fails to explain the basis for the examiner's

14   conclusions.  *See Crane*, 76 F.3d at 253.  As noted, Dr. Arnold used a check-box

15   form to indicate the severity of Plaintiff's assessed limitations.  Tr. 732.  As

16   Plaintiff notes, Dr. Arnold provided some narrative explanations for the limitations

17   set forth in the check-box form.  However, an ALJ may reject limitations not based

18   on clinical findings or consistent with the medical record, *see infra*.

19       Plaintiff further alleges the ALJ erred by relying on the fact that this is a

20   form used for secondary gain related to state benefits.  ECF No. 15 at 18 (citing

     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
     GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 29

1  *Henderson v. Astrue*, 634 F. Supp. 2d 1182, 1191-92 (E.D. Wash. 2009)).  Plaintiff

2  is correct that the purpose for which medical reports are prepared does not provide

3  a legitimate basis for rejecting them.  *See Lester*, 81 F.3d at 832 (the ALJ

4  improperly relied on fact that reports were obtained by the claimant's attorney for

5  the purpose of litigation; purpose for which reports are obtained does not provide a

6  legitimate basis for rejecting them).

7      Next, the ALJ rejected Dr. Arnold's opinion because the DSHS rules

8  governing the definition and assessment of disability differ from those of the

9  Social Security Administration.  Tr. 30.  The regulations provide that the amount

10  of an acceptable source's knowledge of Social Security disability programs and

11  their evidentiary requirements may be considered in evaluating an opinion,

12  regardless of the source of that understanding.  20 C.F.R. § 404.1527.  Although

13  state agency disability rules may differ from Social Security Administration rules

14  regarding disability, it is not always apparent that the differences in rules affect a

15  particular physician's report without further analysis by the ALJ.[3]  There may be

16  _____

17  [3] Here, the ALJ merely asserted, without analysis, that DSHS forms define

18  "marked" differently from the Social Security Administration, and the DSHS

19  forms "make it clear that both the standards for completing the form, and the

20  public interest served by the form," differ from "the standards and objectives of

situations where less weight should be assigned to a DSHS medical opinion based on the differences in definitions and rules, but substantial evidence does not support that finding here.  This is therefore not a specific and legitimate reason for rejecting Dr. Arnold's 2011 opinion.  However, because the ALJ cited other specific, legitimate reasons supported by substantial evidence which justify rejecting the opinion, there is no error.  *See Parra*, 481 F.3d at 747 (finding ALJ error harmless because it did not affect the result).

   2. *Inadequate and Unsupported Bases for Assessed Limitations*

   As noted above, the ALJ found Dr. Arnold's check box form did not contain significant explanation for the limitations assessed.  Tr. 30.  The ALJ need not accept the opinion of any physician if that opinion is brief, conclusory, and inadequately supported by clinical findings.  *See Thomas*, 278 F.3d at 957; *see also Matney v. Sullivan*, 981 F.2d. 1016, 1019 (9th Cir. 1992) ("The ALJ need not

these hearings under the authority of the [SSA]."  Tr. 30.  The DSHS form defines "marked limitations as "causing very significant interference" with the ability to perform work-related activities; the regulations indicate that a marked limitation is one of such degree as "to interfere seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 12.00(C)(1).

1 | accept an opinion of a physician—even a treating physician—if it is conclusory

2 | and brief and is unsupported by clinical findings."). In addition, contradictions

3 | between a doctor's opinion and his own medical results provide a permissible basis

4 | to reject his opinion. *See Bayliss,* 427 F.3d at 1216. The ALJ found, for example,

5 | that Plaintiff's results on the Mini Mental Status Exam indicated normal cognitive

6 | functioning. Tr. 30. This finding contradicts, rather than supports, Dr. Arnold's

7 | assessed moderately severe limitations in cognitive functioning in the check-box

8 | portion of the form. *Compare* Tr. 732 (assessing three moderately severe

9 | limitations in cognitive functioning) *with* Tr. 736 (noting the results of MSE,

10 | 30/30, were normal). Similarly, in activities of daily living, Dr. Arnold's findings

11 | indicate that Plaintiff was moderately limited in only two areas:

12 | driving/transportation and friends/socialization. Tr. 736. This finding is contrary

13 | to the numerous limitations assessed in the check-box portion of the form. Tr. 732.

14 | Moreover, Dr. Arnold did not conduct additional, more formalized testing on

15 | which the assessed limitations in the check-box form could have been based.

16 | Because the ALJ may discount an opinion that is unsupported by clinical findings,

17 | *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004), the

18 | ALJ provided another specific and legitimate reason for affording Dr. Arnold's

19 | opinion limited weight.

20 |

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 32

1  Plaintiff alleges that Dr. Arnold's assessed marked limitation in the ability to

2  perform effectively in a work setting with public contact "was justified."  ECF No.

3  16 at 18 (citing Tr. 732).  The ALJ apparently agreed, because the ALJ

4  incorporated the limitation.  The assessed RFC limits Plaintiff to work with no

5  public contact.  Tr. 26.  Plaintiff fails to identify any error.

6  *3. Effects of Substance Use*

7  With respect to Dr. Arnold's 2012 opinion, and the opinion of examining

8  psychologist Dr. Mabee in 2008, the ALJ correctly found these opinions do not

9  address Plaintiff's limitations without substance abuse.  Tr. 30.  In 2012, Dr.

10  Arnold diagnosed, in part, alcohol dependence and cannabis use (with a reported

11  valid medical marijuana card), that Plaintiff failed to produce.  Tr. 790.  As noted,

12  in his prior evaluation, Dr. Arnold assessed alcohol dependence and cannabis

13  abuse (both in early full remission per client report) and methamphetamine abuse

14  (in sustained full remission per client report).  The difference is that in 2012,

15  Plaintiff told Dr. Arnold that he drank twice a month, last drank over a week ago,

16  and last used marijuana a month earlier.  Tr. 791.  Dr. Arnold did not assess

17  moderate, marked or severe limitations in the more recent report.  The only

18  symptom Dr. Arnold reports that he observed was "depression/recurrent suicidal

19  ideation."  In 2012, Dr. Arnold failed to distinguish between Plaintiff's functioning

20  with and without substance use, because Plaintiff was actively using substances at

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 33

that time, making it impossible to separate out how Plaintiff would function if not using substances.

Plaintiff contends the ALJ erred when he gave "little weight" to Dr. Arnold's opinions, in part, because Dr. Arnold did not consider the effects of "alcohol and drugs in his opinions." ECF No. 15 at 17. Plaintiff is partially correct. In 2011, Dr. Arnold separated out Plaintiff's functioning and assesses limitations without the effects of substance abuse.[4] However, as noted, the ALJ rejected the 2011 opinion, in part, because it was unsupported by clinical findings and inconsistent with the record as a whole. The ALJ's error, if any, in characterizing both reports as failing to separate out the effects of DAA, is harmless. When an ALJ's decision is supported by substantial evidence, an error that does not affect the ultimate nondisability determination is harmless. *Carmickle*, 533 F.3d at 1162. Here, the error is harmless.

The ALJ found Plaintiff was disabled when DAA is included. Tr. 24. This meant the only real question remaining for the ALJ was to determine how Plaintiff functioned without DAA, in order to determine if it was a contributing factor

---

[4] As noted, Dr. Arnold specifically stated that the ratings in section G are "without the effects of DA &A" (Drug and Alcohol Abuse). Tr. 732. In section G, Dr. Arnold assessed one marked and five moderate limitations. *Id.*

material to disability.  The ALJ's determination that Dr. Arnold's 2012 report does

not reflect Plaintiff's limitations without substance abuse is accurate, Tr. 30, since

Plaintiff admitted he was no longer in remission from substance use disorder at the

time of the evaluation.  Therefore, the ALJ did not err in giving little weight to Dr.

Arnold's 2012 opinion because it was not relevant to whether DAA was material to

the disability analysis.  Notably, Plaintiff does not challenge the ALJ's materiality

determination, meaning it is a verity on appeal.  *Bray*, 554 F.3d at 1226 n.7 (an

argument not made in the opening brief is deemed waived).

        In addition, the ALJ notes that Dr. Arnold's reports do not reference

Plaintiff's well-documented substantial lack of medical compliance and ongoing

substance abuse, demonstrating that Dr. Arnold lacked accurate information.  Tr.

30.  The ALJ properly gave less weight to Dr. Arnold's later opinion because it

did not adequately address Plaintiff's limitations when substance abuse is

excluded, records showing significant noncompliance with treatment and ongoing

substance abuse do not appear to have been provided to Dr. Arnold for review, the

severity of the limitations assessed by Dr. Arnold is based on definitions that differ

from those in the social security regulations, and the assessed limitations are not

supported by clinical findings.  As noted, the ALJ improperly considered the

reason the reports were obtained, however, when substantial evidence supports the

ALJ's decision and the error does not affect the ultimate nondisability

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 35

1    determination, the error is harmless.  *Carmickle*, 533 F.3d at 1162.  Here, the error

2    is clearly harmless.

3            *4. Contradiction with Medical Record*

4            Next, the ALJ concluded that Dr. Arnold's opinion was contradicted by

5    other medical evidence in the record, including the opinions of Dr. Vu, Dr. Belzer,

6    and Dr. Layton.  Tr. 30.  Unlike Dr. Arnold, all of these doctors had the

7    opportunity to review the entire record prior to testifying.  Tr. 30.

8            Plaintiff contends that the ALJ erred by relying on the opinions of testifying

9    experts Dr. Vu and Dr. Belzer.  Citing, in part, *Lester*[5] and *Gallant*[6], Plaintiff

10   contends that the opinion of a non-examining, non-treating source "cannot by itself

11   constitute substantial evidence that justifies the rejection of either an examining or

12   a treating physician."  ECF No. 16 at 19-20.  Here, the ALJ provided specific and

13   legitimate reasons for discrediting Dr. Arnold's opinion of extreme limitations.

_____

15   [5] *Lester v. Chater*, 81 F.3d at 831 (citations omitted).

16   [6] *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984) ("A report of a non-

17   examining, non-treating physician should be discounted and is not substantial

18   evidence when contradicted by all other evidence in the record.") (quotation and

19   citation omitted).  Here, other evidence in the record supports the testifying

20   experts' opinions.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 36

The ALJ did not solely rely on the opinions of testifying experts Dr. Vu and Dr.

Belzer, as Plaintiff alleges.

Plaintiff challenges the ALJ's reliance on Dr. Vu's testimony because Dr.

Vu stated that Plaintiff has Hepatitis B; when in fact, Plaintiff has Hepatitis C.

Plaintiff contends, had Dr. Vu reviewed the entire record – the reason the ALJ

gave more weight to Dr. Vu's testimony – Dr. Vu would have identified the correct

diagnosis.  ECF No. 15 at 19 (citing Tr. 52-53).  However, Dr. Vu corrected his

mistake at the hearing and acknowledged Plaintiff suffered from Hepatitis C.

Plaintiff fails to establish harmful error.

Similarly, Plaintiff challenges the ALJ's reliance on Dr. Belzer's testimony,

contending that Dr. Belzer's lack of awareness "that treatment noncompliance

would make the claimant ineligible to meet a listing," shows that he lacks

familiarity with Social Security Regulations.  ECF No. 15 at 19-20 (citing Tr. 91-

92).  First, Plaintiff fails to identify the evidence the ALJ should have relied on

instead, other than Dr. Arnold's previously discounted opinion.  Second, experts

testified that Plaintiff met Listing 12.09 for substance abuse when DAA is

included.  Noncompliance with treatment is irrelevant to meeting this Listing,

contrary to Plaintiff's unsupported allegation.

As the Commissioner correctly observes, the ALJ relied in part on Dr.

Layton's testimony when he considered Dr. Arnold's opinion.  ECF No. 16 at 15.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 37

1  Dr. Layton reviewed the entire record, including Plaintiff's long history of

2  substance use, and opined Plaintiff met listing 12.09 (substance abuse).  Tr. 103-

3  04.  Plaintiff cannot challenge the finding that he met the listing because that is a

4  finding in his favor.  *See, e.g., Burch*, 400 F.3d at 682 (no prejudice where ALJ

5  resolves a step in the claimant's favor).

6       The ALJ cited adequate specific, legitimate reasons constituting substantial

7  evidence in giving little weight to Dr. Arnold's opinions.

8  **C. DAA**

9       Finally, Plaintiff's reply alleges the ALJ did not find that DAA was a

10 contributing factor material to disability; therefore, it is not at issue.  ECF No. 17 at

11 2.  Contrary to Plaintiff's contention, however, the ALJ plainly stated: "The

12 substance abuse disorder is a contributing factor material to the determination of

13 disability because the claimant would not be disabled if he stopped the substance

14 abuse."  Tr. 33.  Plaintiff fails to show any error.

15                              **CONCLUSION**

16       After review, the Court finds that the ALJ's decision is supported by

17 substantial evidence and free of harmful legal error.

18       **IT IS ORDERED:**

19       1.  Plaintiff's motion for summary judgment, **ECF No. 15**, is **denied**.

20       2.  Defendant's motion for summary judgment, **ECF No. 16**, is **granted.**

1    The District Court Executive is directed to file this Order, provide copies to

2  counsel, enter judgment in favor of defendant and **CLOSE** the file.

3    DATED this 16th day of September, 2016.

4                                    _S/Mary K. Dimke_
                                    MARY K. DIMKE
5                        UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20